**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 69 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 1404 EDA |
| | : | 2022 dated August 8, 2023 |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Delaware County Court of |
| | : | Common Pleas, Criminal Division, |
| WILLIAM HITCHNER, | : | at No. CP-23-CR-0002486-2011 |
| | : | dated April 26, 2022. |
| Appellant | : | |
| | : | ARGUED: November 18, 2025 |

**OPINION**

JUSTICE McCAFFERY                                         DECIDED: July 21, 2026

We granted discretionary review in this case to consider whether a sentence of county probation may be tolled by the issuance of a bench warrant before the probation term's expiration date, if that warrant was issued based on contested allegations never proven at a final revocation hearing (commonly referred to as a "*Gagnon II* hearing").[1] But here the Commonwealth seemingly concedes the issuance of the warrant for Appellant, William Hitchner, did not, in and of itself, "toll" his sentence.[2] Instead, relying

---

[1] "[A] probationer is entitled to two hearings when a violation of probation is alleged: a preliminary hearing at the time of arrest and detention to discern whether the alleged violation is supported by probable cause [(a *Gagnon I* hearing)], and a second, more comprehensive hearing prior to the court rendering a final revocation decision [(a *Gagnon II* hearing)]." *Commonwealth v. Foster*, 214 A.3d 1240, 1243 n.3 (Pa. 2019) (*citing Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)).

[2] "Toll," as used here, means "to stop the running of; to abate <toll the limitations period>."
(continued…)

on Superior Court precedent and nonstatutory tolling principles, the Commonwealth argues his probation term was extended by his lack of supervision after he "absconded."[3]

Upon reviewing the record, as explained below, we conclude the Commonwealth failed to present reliable, probative evidence at the *Gagnon II* hearing that Hitchner had absconded (or otherwise violated the conditions of his probation) before his sentence's expiration date. Rather, the Commonwealth sought revocation based solely on violations that occurred after his sentence's expiration date. Thus, the lower court erred by revoking Hitchner's probation based solely on conduct that postdated his probation's expiration. We find his sentence is illegal because the court imposed it without statutory authorization. Therefore, we hold the Superior Court erred in affirming Hitchner's judgment of sentence, vacate his illegal sentence, and remand with instructions for the revocation court to terminate his supervision.

---

Black's Law Dictionary (12th ed. 2024) ("TOLL"). "Generally speaking, tolling 'pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021) (*citing Dubose v. Quinlan*, 173 A.3d 634, 644 (Pa. 2017)).

[3] Legally speaking, "abscond" means to physically leave and conceal oneself for purposes of avoiding arrest, prosecution, or service of legal process. *See* Black's Law Dictionary (12th ed. 2024) ("ABSCOND") ("To depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process."); Merriam-Webster Online Dictionary ("ABSCOND"), https://www.merriam-webster.com/dictionary/abscond (last accessed July 14, 2026) ("[T]o depart secretly and hide oneself."). In the probation context, an "absconder" is someone who "willfully" makes oneself unavailable to the court or supervising authority in order to evade legal obligations. *Commonwealth v. Ortega*, 995 A.2d 879, 885 (Pa. Super. 2010), *disapproved of on other grounds by Foster*, 214 A.3d 1240 (Pa. 2019).

## I. LEGAL BACKGROUND

Since the dispositive issue in this case has proven so elusive, we find it necessary to begin with a discussion of Pennsylvania's laws governing probation revocation.[4] For more than 100 years, probation under Pennsylvania law has been governed primarily by statute. *See Commonwealth v. Rosario*, 294 A.3d 338, 346–356 (Pa. 2023); *Commonwealth v. Kates*, 305 A.2d 701, 704–706 (Pa. 1973); *Commonwealth ex rel. Wilhelm v. Morgan*, 123 A. 337, 338 (Pa. 1924) (recognizing Pennsylvania's statutory scheme "supersedes" common-law principles relating to probation). Probation, generally speaking, "is '[a] sentence imposed for commission of a crime whereby a convicted criminal offender is released into the community under the supervision of a probation officer in lieu of incarceration.'" *Commonwealth v. Holmes*, 933 A.2d 57, 59 n.5 (Pa. 2007) (citation and internal quotation marks omitted). Its fundamental purpose "is to provide a means to achieve rehabilitation without resorting to incarceration." *Kates*, 305 A.2d at 708. Since "probation is designed to rehabilitate a defendant so that he can

---

[4] Hitchner's underlying criminal offense, conviction, original judgment of sentence, and initial (later vacated) judgment of sentence for alleged violations of his probation all occurred before December 2019, when the General Assembly amended portions of the probation statutes. *See* Act of Dec. 18, 2019, P.L. 776, No. 115, §§ 4 (codified as amended at 42 Pa.C.S. §§ 9771, 9771.1) (effective immediately). Those amendments were in effect on April 26, 2022, when Hitchner's probation was revoked on remand after the Superior Court vacated the initial post-revocation sentence. We assume, without deciding, that the December 2019 amendments apply, because our disposition would be the same regardless.

We note the General Assembly further revised the probation revocation statutes, effective June 11, 2024, by, *inter alia*, adopting provisions that expressly refer to "abscond[ers]." *See* Act of Dec. 14, 2023, P.L. 381, No. 44, §§ 3–4 (codified as amended at 42 Pa.C.S. §§ 9771(c)(1)(iii)(E), 9774.1(g)(1)(iii)(E) (2025)). These amendments do not impact our disposition of Hitchner's appeal from his April 26, 2022 judgment of sentence. *See* 1 Pa.C.S. § 1953 (providing that, when interpreting an amendatory statute, "the new provisions shall be construed as effective only from the date when the amendment became effective"); *Commonwealth v. Shaffer*, 734 A.2d 840, 843 (Pa. 1999) ("[A]mendatory statutes are to be construed retroactively only if such construction is clearly indicated under the provisions of the statute." (citation omitted)).

become a productive member of society[,] … probation promotes the interests of the public as well as the defendant." *Commonwealth v. Carver*, 923 A.2d 495, 497 (Pa. Super. 2007) (citation omitted); *see also Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) ("The primary concern of probation … is the rehabilitation and restoration of the individual to a useful life." (citation omitted)).

Pennsylvania employs a "definite probation sentencing scheme[,]" which "requires the imposition of probation for a fixed period of time." *Rosario*, 294 A.3d at 350 (*citing* 42 Pa.C.S. §§ 9754(a), 9763(a)).[5]   The court also "is statutorily required to 'specify at the time of sentencing … the length of the term of restrictive conditions' of probation." *Id.* (*citing* 42 Pa.C.S. § 9763(a)).  To that end, "[t]heories of implied probation and indefinite suspension of sentence are not only contrary to the clearly expressed intent of the legislature, but are also violative of true principles of probation and … promote confusion where none should exist." *Commonwealth v. Duff*, 200 A.2d 773, 774 (Pa. 1964); *see also Thompson v. Thompson*, 223 A.3d 1272, 1279 (Pa. 2020) ("These words ring as true today as they did decades ago in *Duff*[.]").

The Sentencing Code implements Pennsylvania's definite probation regime, authorizing courts to impose probation as a sentencing alternative and prescribing the circumstances under which probation may be revoked.  Section 9754(a) sets forth, in pertinent part, that "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any **term** during which the defendant is to be supervised, which term may not exceed the maximum **term** for which the defendant could be confined, and the authority that shall conduct the supervision."[6]   42 Pa.C.S. § 9754(a) (2022)

---

[5] By contrast, in "an indefinite regime[,] the probationary term is not necessarily confined to a fixed period of time[.]"  *Rosario*, 294 A.3d at 350.

[6] The word "term," as used in this context, means "[a] fixed period of time[.]"  Black's Law Dictionary (12th ed. 2024) ("TERM").

(emphases added).  Subsection (b) requires that the sentencing court "attach reasonable conditions authorized by [S]ection 9763 (treating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life."  42 Pa.C.S. § 9754(b) (2022).[7]  The conditions of probation authorized by statute include, as relevant here, reporting requirements.  *See* 42 Pa.C.S. § 9763(b)(12) (2022); *see also* 42 Pa.C.S. § 9754(c)(11) (2013) (deleted by Act of Dec. 18, 2019, P.L. 776, No. 115, § 4).  Section 9754(d) provides that "[t]he sentence to be imposed in the event of the violation of a condition shall not be fixed prior to a finding on the record that a violation has occurred."  42 Pa.C.S. § 9754(d) (2022).

Section 9771 governs the modification and revocation of probation.  *See Rosario*, 294 A.3d at 346.  Subsection (a) provides that a "court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety."  42 Pa.C.S. § 9771(a) (2022).  Subsection (b) prohibits revocation except "upon proof of the violation of specified conditions of the probation."  42 Pa.C.S. § 9771(b) (2022).  Although the statutory scheme does not tolerate "implied conditions" of probation, a "central" component of a probationary sentence "is the condition that the defendant remain crime-free."  *Foster*, 214 A.3d at 1250 n.13.  Subsection (b) thus prohibits a court from revoking probation based solely on a determination that probation has been ineffective or that the defendant's conduct reflects poor rehabilitative progress.  *See id.* at 1243, 1250–1251.  Instead, probation is revocable only upon proof that the defendant violated a "specific condition[]" of probation or committed a new criminal offense.  *Id.* at 1250.  Subsection

---

[7] The current version of Section 9754(b) omits the language "as it deems necessary to ensure or assist the defendant in leading a law-abiding life."  42 Pa.C.S. § 9754(b) (2025).

(d) prohibits revocation "except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation." 42 Pa.C.S. § 9771(d) (2022).

The hearing required under Section 9771(d) serves as the final revocation proceeding mandated by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).[8] The final revocation decision consists of "two analytically distinct" steps. *Id.* at 784 (*citing Morrissey v. Brewer*, 408 U.S. 471, 479–480 (1972)). The court must first decide "whether the [defendant] has in fact acted in violation of one or more conditions of his [probation]." *Id.* (citation omitted). If "the [defendant] did violate the conditions[,]" the court must then ask: "[S]hould the [defendant] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Id.* (citation omitted). The appeal *sub judice* focuses only on the first step — whether a violation justifying revocation occurred.

The Commonwealth bears the burden of proof in revocation proceedings. *Commonwealth v. Brown*, 469 A.2d 1371, 1372 n.2 (Pa. 1983). It must prove "its case by a preponderance of the evidence." *Id.* (citations omitted). The evidence must be "probative and reliable." *Commonwealth v. Quinlan*, 412 A.2d 494, 496 (Pa. 1980) (citation omitted). Moreover, because "Section 9771(d) sets forth a compulsory obligation to consider the defendant's conduct on probation[,]" the Commonwealth must produce evidence of this. *Rosario*, 294 A.3d at 349 n.13. "The revocation court has no discretion

---

[8] Aside from transferring this provision from the Crimes Code to the Sentencing Code in 1980, the General Assembly has not amended Section 9771(d) since its adoption in 1974, one year after the *Gagnon* decision, which held that the constitutional due process protections guaranteed to parolees applied equally to probationers. *See Gagnon*, 411 U.S. at 781 ("[T]he loss of liberty entailed [by revocation] is a serious deprivation requiring that the [probationer] be accorded due process."); *see also* Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1 (codified as amended at 18 Pa.C.S. § 1371; renumbered as 42 Pa.C.S. § 9771 by Act of Oct. 5, 1980, P.L. 693, No. 142, § 401(a)).

to opt out of this obligatory consideration, either because probation has not yet started or for any other reason." *Id.*

Since the court's power to revoke probation derives from Section 9771 and is triggered only by a violation of a specified condition or a new crime, the court's revocation authority does not attach before the probationary period begins. *See id.* at 349 ("If the probation has not commenced, then perforce there is no conduct of the defendant while on probation for the court to consider."). In other words, the statute presupposes that a probation term begins before a defendant may engage in conduct furnishing grounds for revocation. *See id.* at 348–349; *Commonwealth v. Simmons*, 262 A.3d 512, 523–528 (Pa. Super. 2021) (*en banc*). Thus, conduct occurring before the commencement of a probation term cannot constitute grounds for revocation of that probationary sentence. *See Rosario*, 294 A.3d at 348–349, 355–356.

The duration of the court's revocation authority is likewise limited. *See id.* at 347 ("[R]evocation cannot be ordered at any time but rather is subject to temporal limitations, *i.e.*, revocation is permissible solely during the term of the probation itself." (citation omitted)). As pertinent here, a court has no authority to revoke a probationer's sentence based on conduct that occurred after the term's expiration. *See Commonwealth v. Wright*, 116 A.3d 133, 136–137 (Pa. Super. 2015); *see also Morgan*, 123 A. at 338 (interpreting former probation statutes and opining that, even after a probationary term expires, "for violation of the terms of the probation the defendant may be brought in and sentenced, but, of course, such violation must occur during the probationary period"). In addition, unlike the laws of several other states, Pennsylvania's probation scheme does not contain a statutory tolling provision.[9] That is, the probation statutes are silent as to

---

[9] *See, e.g.*, Conn. Gen. Stat. § 53a-31(b)–(c); Ga. Code Ann. § 42-8-36(a); Ind. Code § 35-38-2-3(c); La. Code Crim. Proc. Ann. art. 899(D); N.M. Stat. Ann. § 31-21-15(B)–(C); Ohio Rev. Code Ann. § 2951.07; Va. Code Ann. § 19.2–306(C); Wis. Stat. § 304.072.

whether — and if so, under what circumstances — the running of a probationary term may be stopped.

## II.     FACTUAL AND PROCEDURAL HISTORY

On July 19, 2013, Hitchner pled guilty to driving under the influence of alcohol and a controlled substance (third offense) and driving with a suspended or revoked license. *See* 75 Pa.C.S §§ 1543(b)(1), 3802(d)(3).  The trial court sentenced him to one-to-two years in a state correctional institution followed by three years of county probation.  There is no dispute that the expiration date of his probation term was July 19, 2018.

Upon Hitchner's release from confinement, the Delaware County Office of Adult Probation and Parole ("Delaware County") was authorized to supervise his probation. *See Commonwealth v. Hitchner (Hitchner I)*, 241 A.3d 453 (Pa. Super. 2020) (unpub. memo. at *1).  He then "relocated to the State of Delaware in order to care for his mother, who had a stroke, and his supervision was transferred to the State of Delaware pursuant to the Interstate Compact for the Supervision of Adult Offenders Act."[10]  *See id.* (footnote omitted) (*citing* 61 Pa.C.S. §§ 7111–7115).

Approximately six months before the expiration of the probationary period, the Delaware Probation Office ("Delaware State") informed Delaware County that Hitchner violated the conditions of his supervision by, among other things, failing to report to his probation officer on multiple occasions.  Delaware State memorialized its allegations in a written report (the "Delaware State Report") and sent it to Delaware County.  The report "documented events between December 15, 2017, and January 10, 2018, including conversations between [Hitchner] and the authoring officer, between [Hitchner's] sister and the author, and between [Hitchner] and an unnamed male officer." *Hitchner I*, 241

---

[10] "The Interstate Compact is an agreement entered into by the states to govern the movement, supervision and rehabilitation of parolees and probationers." *Hitchner I*, 241 A.3d at *1 n.2 (*citing* 61 Pa.C.S. § 7112).

A.3d at *1 (citation and footnote omitted). Based on the report, which contained no supporting documentation and no certificate of authenticity, Delaware County requested a bench warrant for Hitchner's arrest.[11] *See id.*

On February 1, 2018, a judge issued a bench warrant for Hitchner based on the alleged violations (the "Warrant"). Police arrested him on or about January 23, 2019, more than six months after his probationary term's expiration date. Nearly one month later, a common pleas judge accepted, for purposes of a *Gagnon I* hearing, a hearing master's recommendation to find probable cause based on the Delaware State Report that Hitchner had violated the conditions of his probation. The warrant was rescinded,[12] and Hitchner was released from confinement. The revocation court scheduled a *Gagnon II* hearing for mid-March, but later continued it until April 12, 2019. However, on April 8, 2019, Delaware County secured a second bench warrant for Hitchner's arrest due to a failed drug test on March 22, 2019, and failures to report on March 29, 2019, and April 5, 2019. Police arrested Hitchner again on August 30, 2019. The court initially scheduled a new *Gagnon II* hearing for a date in late October, but it was continued in light of new

---

[11] A bench warrant is a court order issued by a judge directing law enforcement to arrest a specified individual and bring that person before the court for failure to comply with a court obligation. *See Commonwealth v. Smith*, 234 A.3d 576, 585 (Pa. 2020). Although Pennsylvania's procedural rules and statutes are silent as to the issuance of bench warrants for probation absconders, courts often issue them to secure a probation absconder's presence for *Gagnon* proceedings. *See id.* at 581 (quoting revocation court's observation that "[b]ench warrants are routinely issued by the court when a defendant has either failed to attend a required court hearing or fails to report to his probation officer as required and ordered by the court"); *see also* Pa.R.Crim.P. 150 (setting forth procedures that apply when bench warrants are executed).

[12] *See* Pa.R.Crim.P. 150(A)(6) ("At the conclusion of the bench warrant hearing following the disposition of the matter, the judicial officer immediately shall vacate the bench warrant.").

criminal charges filed against Hitchner relating to his possession of a controlled substance during his pre-hearing detention in September 2019.[13]

Hitchner's *Gagnon II* hearing was held on November 6, 2019. At the hearing, the Commonwealth admitted the Delaware State Report into evidence. However, "[t]he author of the report from the Delaware State Probation Office did not testify, the Commonwealth did not offer a certification authenticating the report, and [no one] explicitly testified to being the custodian of the report." *Hitchner I*, 241 A.3d at *2 (citations omitted). Hitchner objected on hearsay grounds, but the revocation court overruled his objection, reasoning that the report was admissible as a business record that fell within the hearsay exception under Pa.R.E. 803(6). Relying on the report's contents and the testimony of Delaware County Probation Officer Jeff Roney, the court found Hitchner in violation, revoked his supervision, and then sentenced him to time-served to six months' imprisonment with a consecutive term of 30 months' probation.

Hitchner appealed to the Superior Court and raised the issue of whether the lower court erred in revoking his probation "based entirely on inadmissible hearsay evidence."[14] *Hitchner I*, 241 A.3d at *2 (citation omitted). He argued the court improperly admitted the Delaware State Report into evidence because the Commonwealth failed to establish the

---

[13] On April 8, 2020, in connection with the September 2019 incident, Hitchner pled guilty to possession of a controlled substance by an inmate. The court sentenced him to time-served to 23 months' imprisonment, followed by three years of probation. He was then released on county parole. *See Commonwealth v. Hitchner (Hitchner II)*, 304 A.3d 732 (Pa. Super. 2023) (unpub. memo. at *2).

[14] Under Superior Court precedent, "absent a finding of good cause for not allowing confrontation," inadmissible hearsay evidence alone is insufficient to establish the Commonwealth's case in a revocation proceeding. *Commonwealth v. Allshouse*, 969 A.2d 1236, 1241 (Pa. Super. 2009) (citation omitted). In Hitchner's case, the Commonwealth never claimed there was "good cause" to admit the inadmissible hearsay without violating his "right to confront and cross-examine adverse witnesses" at his final revocation hearing. *Gagnon*, 411 U.S. at 786 (*citing Morrissey*, 408 U.S. at 489).

criteria for its admission under Pa.R.E. 803(6), stressing that the Commonwealth failed to authenticate the report *via* certification or through testimony of the record's custodian or another qualifying witness. Relying on our Court's precedent on Pa.R.E. 803(6), the Superior Court agreed with Hitchner. *See id.* at *3 (*citing In re A.J.R.-H.*, 188 A.3d 1157, 1167–1169 (Pa. 2018)). The Court explained:

> [T]he report from the Delaware State Probation Office documented conversations that occurred between individuals who did not testify and/or who did not author the report — including [Hitchner], [his] sister, an unnamed male officer, and, of course, the non-testifying author. ... Furthermore, the document itself indicates that it was written anywhere from a minimum of eight days to over a month after the events it chronicles. These facts suggest that the manner in which the report of the Delaware State Probation Office was admitted into evidence failed to satisfy the business records exception.
>
> However, in the Commonwealth's favor is Officer Roney's testimony that the report was made in the regular practice of the activity involved. Additionally, his explanation that the report was prepared in order for an individual to be supervised arguably qualifies as the mode of the documents' preparation. Nevertheless, these considerations are not enough to compensate for the above-mentioned defects in the authentication of the report.
>
> Based upon these deficiencies, we cannot accept that the report was properly authenticated nor can the Commonwealth guarantee the trustworthiness of its contents. Accordingly, the trial court erred in admitting this evidence.

*Id.* at *3–4 (citations omitted). The Court concluded the error was not harmless and thus vacated Hitchner's sentence and remanded for a new *Gagnon II* hearing. *See id.* at *4.

On remand, at a hearing held on November 17, 2021, the Commonwealth presented the testimony of Delaware County Probation Officer Deborah Lamberto. She testified she began supervising Hitchner sometime "back in 2018." N.T., 11/17/2021, at 11. She also mentioned that a bench warrant was issued for Hitchner's arrest based on the Delaware State Report, and she acknowledged the Superior Court's decision remanding his case for a new *Gagnon II* hearing. She then explained Hitchner's

conditions of probation, including weekly or biweekly reporting, random drug screens, and drug/alcohol evaluations. She testified that Hitchner failed to report on March 29, 2019, and April 5, 2019, and that he tested positive for methamphetamine several times between March 22, 2019, and February 25, 2021. However, she failed to point to any violative conduct by Hitchner while on probation before his term's expiration date of July 19, 2018. Her testimony about Hitchner's conduct while on probation was limited to the fact that his probation was subject to an interstate compact with Delaware State and the fact that Delaware County later resumed supervision in response to the "**alleged** violations of [his] Delaware supervision." N.T., 11/17/2021, at 12–13 (emphasis added).

On April 26, 2022, the revocation proceedings resumed.[15] No new evidence was presented, but Officer Lamberto amended Delaware County's recommendation and asked the court to find Hitchner in violation of his probation and sentence him to three-to-six months of incarceration (with credit for time served). Ultimately, the court found Hitchner in violation based on his post-July 2018 conduct, revoked his probation, and adopted Delaware County's sentencing recommendation.[16]

Hitchner subsequently filed a notice of appeal and his counsel moved for leave to withdraw, which the trial court granted. With newly appointed counsel's assistance, Hitchner filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and raised the following issue:

> Whether the probation supervision in the within matter expired at the time [Hitchner] committed a new crime, rendering unlawful the finding that [he] violated his supervision and the entry of a new judgment of sentence, where

---

[15] For reasons unrelated to this appeal, Hitchner's then-counsel requested a continuance before the conclusion of the *Gagnon II* hearing on November 17, 2021, and she later requested — and was granted— leave to withdraw as counsel. After appointing new counsel, the court reconvened the proceedings.

[16] The court also found Hitchner violated his parole in his separate drug-possession-by-inmate case. *See Hitchner II*, 304 A.3d at *8–10. That matter is not before us on appeal.

the original warrant for the violation, issued February 1, 2018, was based upon alleged violations emanating from the State [o]f Delaware that were not proven at the *Gagnon II* hearing held November 17, 2021, and where the alleged violations established at that hearing occurred after [his] supervision would have expired?

*Hitchner II*, 304 A.3d at \*4 (citation omitted).

In its Pa.R.A.P. 1925(a) opinion, the revocation court agreed with Hitchner. The court stated that the Superior Court's decision in *Hitchner I* "effectively rendered the underlying bench warrant *void ab initio*."[17] Trial Court Opinion, 9/13/2022, at 3 (unpaginated). The court recounted how, in the *Gagnon II* proceedings held on remand, "the Commonwealth completely abandoned reliance upon any alleged Delaware State [Probation] violation(s); and went to great lengths in order to exclude any information regarding violations that occurred prior to the July 19, 2018 maximum date." *Id.* (citation omitted). The Commonwealth instead "offered allegations of violation(s) that occurred on or after March 22, 2019; eight months and four days after the scheduled supervision maximum date." *Id.* (citation omitted). As a result, the court concluded it had erred in revoking Hitchner's probation, and asked the Superior Court to vacate his sentence.

The Superior Court refused the court's request and affirmed Hitchner's judgment of sentence. Relying on its own precedent, the Court stated Pennsylvania courts "have long rejected the notion that the sentence of an absconder or delinquent parolee continues to run, as if it were being served, to the point of expiring on its scheduled expiration date." *Hitchner II*, 304 A.3d at \*5 (*citing Ortega*, 995 A.2d at 885). The Court reaffirmed that "if an individual absconds or is otherwise delinquent while on probation, his probationary period will be 'extended by his ongoing delinquency.'" *Id.* (*citing Ortega*, 994 A.2d at 885; *and Wright*, 116 A.3d at 136–137). "Hence, a court may revoke probation based upon conduct that occurred during a defendant's probation 'as extended

---

[17] *See* Black's Law Dictionary (12th ed. 2024) ("VOID AB INITIO") ("Null from the beginning, as from the first moment when a contract is entered into.").

by delinquent time.'" *Id.* (*citing Ortega*, 995 A.2d at 885). Ultimately, relying on the *Ortega* rule, the Superior Court rejected Hitchner's argument that his probation expired on July 19, 2018, and instead held "his supervision was 'extended by his ongoing delinquency.'" *Id.* (*citing Ortega*, 995 A.2d at 885).

The Court found two separate periods of absconding time that, taken together, resulted in an adjusted expiration date of December 3, 2019. The Court first noted that the Warrant was issued on February 1, 2018 (5 months and 18 days before his probation's expiration date), and that Hitchner was not arrested until January 23, 2019 — a total of 356 days. The Court reasoned that "[b]ecause [he] absconded and was not apprehended until January 23, 2019, his probation period was extended until July 11, 2019[.]" *Hitchner II*, 304 A.3d at *5. Thus, Hitchner's probation was extended 356 days.

The Court then noted that the second bench warrant was issued on April 8, 2019 (3 months and 3 days before his probation's adjusted expiration date), and that Hitchner was not arrested until August 30, 2019 — a total of 144 days. The Court reasoned that because he absconded during that time as well, his "probationary period was further extended to December 3, 2019[.]" *Hitchner II*, 304 A.3d at *5. Thus, Hitchner's probation was extended for a total of 500 days.

The Superior Court concluded that, since Hitchner's probation was extended until December 3rd, the Commonwealth had the burden of proving by a preponderance of the evidence that he "violated a specific condition of probation or committed a new crime prior to" that date. *Hitchner II*, 304 A.3d at *5 (internal quotation marks and citation omitted). The Court held the Commonwealth met its burden based on Officer Lamberto's testimony that Hitchner had committed three technical violations and committed a new crime after July 19, 2018, but before December 3, 2019. *See id.* at *5–6. The Court thus concluded "that the Commonwealth established that [Hitchner] violated the terms of his probation

prior to its expiration on December 3, 2019."[18] *Id.* at *6.

## III. THE ISSUE

Hitchner filed a petition for allowance of appeal, which we granted to resolve the question of "[w]hether a warrant for arrest issued for suspected probation violations stops the running of the probationary term, where the warrant request was based upon allegations that could not be proven at subsequent *Gagnon I* and *Gagnon II* proceedings." *Commonwealth v. Hitchner*, 326 A.3d 91 (Pa. 2024) (*per curiam*). However, as noted at the outset, the Commonwealth essentially concedes that the Warrant did not toll Hitcher's probation term and instead contends the term was extended due to his absconding from supervision. The Commonwealth asks us to affirm the judgment of sentence on the grounds that the lower court did not err in revoking Hitchner's probation, as his probation "was still active" at the time of his three technical violations and new criminal offense in 2019 because he "had not yet served the entirety of his sentence at the time he absconded from supervision[.]" Commonwealth's Brief at 1.

## IV. DISCUSSION

Our scope of review in an appeal challenging "a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation." *Commonwealth v. Infante*, 888 A.2d 783, 790 (Pa. 2005) (citation omitted), *abrogated on other grounds by Foster*, 214 A.3d 1240 (Pa. 2019). Whether a sentence is illegal raises "a question of law; thus, our scope of review is plenary, and our standard of review is *de novo*." *Commonwealth v. Hill*, 238 A.3d 399, 409–410 (Pa. 2020) (citation omitted). When issues of statutory interpretation or

---

[18] The Superior Court also addressed "whether [Hitchner]'s 'probation [was] revoked and [his] sentence imposed within a reasonable time after the expiration of the probationary period.'" *Hitchner II*, 304 A.3d at *6 (*citing Wright*, 116 A.3d at 137). The Court held that it was. *See id.* at *6–8. That issue is not before us on appeal.

application arise, we exercise *de novo*, plenary review. *See Gidor v. Mangus*, 345 A.3d 629, 639 (Pa. 2025).

### A. The Commonwealth Failed to Meet Its Burden of Proof

As we observed at the outset, the Commonwealth concedes that the Warrant itself did not toll the probationary clock in Hitchner's case. We accept this concession and hold that a bench warrant, by itself, cannot pause the running of a probation term where, as here, the warrant was issued based solely on inadmissible hearsay allegations that were contested and never proven at a *Gagnon II* hearing.

That said, the Commonwealth's concession is impossible to reconcile with the Superior Court's reasoning. The Court relied solely on the Warrant to infer that Hitchner absconded before his probation's expiration date of July 19, 2018. The Court started its calculation of the relevant absconding period on February 1, 2018, which was the date the Warrant was issued. *See Hitchner II*, 304 A.3d at *5. However, unlike the admitted absconder in *Ortega*, Hitchner challenged the validity of the Warrant by disputing the allegations set forth therein that he had absconded and violated his probation before its expiration date of July 19, 2018. The revocation court ultimately, albeit belatedly, determined that the Commonwealth's failure to substantiate the allegations set forth in the Warrant rendered it null and void. *See* Trial Court Opinion, 9/13/2022, at 3. We agree. In our view, regardless of its validity, a contested bench warrant does not constitute probative, reliable evidence of the allegations underlying its issuance. *See Infante*, 888 A.2d at 793 n.10 (noting that "a probationer … can demand proof of the facts in support of the arrest upon which the violation is based") (*citing Commonwealth v. Sims*, 770 A.2d 346 (Pa. Super. 2001)). Thus, the Warrant was not legally competent evidence that Hitchner absconded before his probation term's expiration date.

Further, even if the Warrant was not rendered *void ab initio*, we cannot ignore that the Commonwealth failed to introduce the Warrant as evidence at the *Gagnon II* hearing.[19]  Section 9771(d)'s plain language requires that the revocation court base its decision on "**evidence of the conduct of the defendant while on probation**."  42 Pa.C.S. § 9771(d) (emphasis added).  In finding that Hitchner (allegedly) absconded before his probation's expiration date in July 2018, the Superior Court did not rely on "probative and reliable" evidence presented at the November 2021 *Gagnon II* hearing.  *Quinlan*, 412 A.2d at 496.  Indeed, the only evidence that Hitchner absconded came in the form of Officer Lamberto's testimony,[20] and she properly clarified that the allegations underlying the Warrant were nothing more than "**alleged** violations of [his] Delaware [State] supervision."  N.T., 11/17/2021, at 12–13 (emphasis added).  Simply put, her testimony on that score was not offered for its truth but rather to provide "background." *Hitchner II*, 304 A.3d at *5 n.4.  In other words, Officer Lamberto's testimony was offered not as "substantive evidence" but rather to provide "a complete picture of [her] investigation."  *Commonwealth v. Jones*, 658 A.2d 746, 751–752 (Pa. 1995); *see also Commonwealth v. Palsa*, 555 A.2d 808, 810 (Pa. 1989) ("It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are

---

[19] At oral argument, the Commonwealth conceded this point. *See* Oral Argument at 1:54:25–1:55:29, *Commonwealth v. Hitchner*,  69 MAP 2024 (Pa. Nov. 18, 2025), available at https://www.youtube.com/watch?v=cuY5nBaA2VA.

[20] Again, the Commonwealth did not seek revocation of probation based on the alleged violations of his **Delaware State** supervision.  *See Hitchner II*, 304 A.3d at *5 n.4 (citation omitted).  It affirmatively abandoned those alleged violations.  *See* Trial Court Opinion, 9/13/2022, at 3 (pagination supplied).  It deliberately avoided presenting any evidence relating to those violations.  *See* N.T., 11/17/2021, at 52 (Commonwealth representing that it "removed every comment about interstate compact from this report. ... We agree, no talk about interstate compact").  In doing so, the Commonwealth neglected to present any reliable, probative evidence of the events that transpired before July 19, 2018, when Hitchner's probation term was scheduled to naturally expire.

admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted." (citations omitted)).

The Commonwealth failed to present any probative, reliable evidence of what happened before the probationary term's expiration date of July 19, 2018. Thus, we cannot conclude that the Commonwealth showed that Hitchner was unsupervised between February 1, 2018, and July 19, 2018. The mere issuance of a bench warrant, particularly one issued solely based on contested allegations, is not enough to conclude that a probationer was unsupervised, let alone an **absconder**. *See, e.g.*, *Commonwealth v. Lopez*, 280 A.3d 887, 899–900 (Pa. 2022) (recognizing that, pursuant to Pa.R.Crim.P. 706, sentencing courts may issue bench warrants "for defendants unable to pay fines or costs"). Had Hitchner not contested the absconding allegations and instead stipulated as to the Warrant's validity, perhaps our decision would be different. *See Smith*, 234 A.3d at 585.[21] But since Hitchner contested the allegations set forth in the Warrant, the Commonwealth was required to prove them by a preponderance of the evidence. *See Infante*, 888 A.2d at 793 n.10; *Brown*, 469 A.2d at 1372 n.2.

---

[21] In *Smith*, this Court addressed the question of whether, in a prosecution for possession of a firearm by a prohibited person under 18 Pa.C.S. § 6105(c)(2), the phrase "fugitive of justice" covered a defendant who stipulated that, at the time he was found in possession of said firearm, he was the subject of an active bench warrant for failing to comply with his reporting obligations while on probation. *Smith*, 234 A.3d at 585–586 & n.10. We answered yes and opined that "a bench warrant issues only when an individual does not appear when required, and thus acts to elude or evade law enforcement or prosecution. It logically follows that an individual who evades law enforcement such that a bench warrant is issued … is a fugitive as that term is commonly defined." *Id.* at 585 (footnote omitted). However, our holding was limited to "whether the record was sufficient to sustain [the defendant's] conviction pursuant to a specific statute, namely Section 6105." *Id.* at 579 n.2. More importantly, the active bench warrant's validity went unchallenged due to the defendant's stipulation. For those reasons, *Smith* does not control in Hitchner's case, and we presume that is why neither party cited it.

Even if we assume that Hitchner was unsupervised for some period before his probation's expiration date, the Commonwealth's failure to present any evidence that he **absconded** is fatal. The mere fact that a probationer was unsupervised is not enough to toll his sentence, let alone prove that he absconded or otherwise violated a condition of his supervision. *See Commonwealth v. Mathias*, 121 A.3d 558, 562–563 (Pa. Super. 2015). Section 9754(a) expressly requires that an order of probation "specify at the time of sentencing the length of any term during which the defendant **is to be supervised**." 42 Pa.C.S. § 9754(a) (emphasis added).[22] The Commonwealth bears the burden of

---

[22] The Commonwealth insists that the language "any term during which the defendant is to be supervised," as used in Section 9754(a), means a probationer is sentenced to a "term of supervision." Commonwealth's Brief at 11–12. The Commonwealth argues that, as a matter of law, when "a defendant is not being supervised, he cannot **be serving** the probationary sentence as the statute demands[.]" *Id.* at 9 (emphasis in original). However, we cannot "rewrite a statute in order to supply terms which are not present therein[.]" *In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 611 (Pa. 2020); *cf. Rico v. United States*, 146 S.Ct. 947, 953 (2026) ("Whatever the wisdom of a policy like that, we see nothing in the law authorizing it.").

The Commonwealth simply assumes the phrase "is to be supervised" means that an unsupervised probationer does not serve his sentence. 42 Pa.C.S. § 9754(a). In doing so, the Commonwealth overlooks that the phrase is in the double passive voice. *See* Bryan A. Garner, Garner's Modern American Usage 613 (3d ed. 2009) ("DOUBLE PASSIVE VOICE") (explaining that double passive voice means "using one passive immediately after another[,]" and that it creates even more ambiguity than a single use of the passive voice). *Accord* Bryan A. Garner, Garner's Dictionary of Legal Usage 660–661 (3d ed. 2011) (discussing double passives). "Double passives hide the actor or the sentence's subject." Gerald Lebovits et al., *Ethical Judicial Opinion Writing*, 21 Geo. J. Legal Ethics 237, 262 (2008); *see also* Anita S. Krishnakumar, *Passive-Voice References in Statutory Interpretation*, 76 Brooklyn L. Rev. 941, 944 (2011) (discussing U.S. Supreme Court cases supporting "the uncontroversial presumption that a statute written in the passive voice leaves the identity of the relevant statutory actor indeterminate"). Nevertheless, the most textually plausible meaning of the phrase "is to be supervised," when read in light of the surrounding statutory context, is that a probationer serves his sentence even if he is unsupervised. *Cf. Rico*, 146 S.Ct. at 953 (rejecting the government's view that "an absconding defendant's term of supervised release does not expire when a court has directed but continues to run so long as the defendant remains out of contact with his probation officer").

For instance, if the Commonwealth declined to supervise a probationer, that would
(continued…)

proving, by a preponderance of the evidence, that the probationer in fact absconded. *See Brown*, 469 A.2d at 1372 n.2. However, due to the Commonwealth's failure to introduce the Warrant or present any evidence of Hitchner's conduct on probation before July 2018, for all we know, the Warrant was issued because Hitchner violated a condition of probation unrelated to his reporting obligations, in which case he would not have been an absconder at all.

The Commonwealth nevertheless maintains the Superior Court's time computation is accurate and insists the lower court did not abuse its discretion in revoking Hitchner's probation and sentencing him for violations that occurred more than seven months after his term's expiration date of July 19, 2018. *See* Commonwealth's Brief at 16–19. It relies on the *Ortega* rule and insists that "[i]f an individual chooses to abscond or is otherwise delinquent while on probation, his probationary term will be extended by his ongoing delinquency and a court may revoke probation based upon conduct that violated probation during the extended probationary time." *Id.* at 17 (*citing Ortega*, 995 A.2d at 885). It also contends that, while Hitchner's violations postdated July 19, 2018, they still occurred during his probationary term as "extended" by his absconding:

> Had [Hitchner] not absconded, he could have appeared, the [W]arrant could have been rescinded, and he could have served his remaining months. He chose to abscond. It was his disappearance that **extended** the expiration date the 5 months and 18 days, not the [W]arrant.

*Id.* at 15 (footnote omitted; emphasis added).

---

"not alter the fact that, during [the period of nonsupervision], [the probationer] was **serving his sentence**." *Mathias*, 121 A.3d at 562 (emphasis in original); *see also id.* at 562–563 (explaining that, although a county probation office "ha[d] a policy of not supervising probation when an appeal is pending[,]" "that policy did not act to stay [the probationer's] sentence and d[id] not alter the fact that, during the pendency of his appeals, [he] was serving his sentence" (emphases and footnote omitted)). Thus, we decline to adopt the Commonwealth's *per se* rule that any unsupervised probationer qualifies as an "absconder."

The Commonwealth's argument misses the mark. It overlooks that it first needed to present probative, reliable evidence and prove, by a preponderance of that evidence, that Hitchner was a "probation absconder." *Wright*, 116 A.3d at 137; *see also Brown*, 469 A.2d at 1372 n.2; *Quinlan*, 412 A.2d at 496. Probation cannot be revoked based on violations that postdate the expiration of the probation term. *See Wright*, 116 A.3d at 137; *see also Morgan*, 123 A. at 338 (noting that a "defendant may be brought in and sentenced" for a probation violation but only if the violation "occur[red] during the probationary period"). Here, despite its order revoking Hitchner's probation, the revocation court subsequently found the Commonwealth did not present **any evidence** that Hitchner absconded before his probation's expiration date. *See* Trial Court Opinion, 9/13/2022, at 3 (pagination supplied). Moreover, the Commonwealth conceded Hitchner was never adjudicated, for purposes of the *Gagnon II* hearing, as having been an "absconder" before his probation term's expiration date.[23] Given that the hearing record is devoid of any reliable, probative evidence that Hitchner absconded before his probation term's expiration date, we conclude the Commonwealth did not meet its burden of proof.

In sum, since the Commonwealth failed to carry its burden of establishing that Hitchner absconded before his probation's expiration date of July 19, 2018, the Commonwealth cannot prove that he violated his probation based on conduct that postdated July 2018. And since the Commonwealth deliberately abandoned the allegations underlying the Warrant and failed to produce any evidence of Hitchner's "conduct on probation" before July 19, 2018, we agree with the revocation court that it committed a legal error in revoking his probation and imposing a new sentence. As a matter of law, Hitchner's probation ended on its fixed expiration date of July 19, 2018.

---

[23] *See* Oral Argument at 2:07:30–2:07:33, *Commonwealth v. Hitchner*, 69 MAP 2024 (Pa. Nov. 18, 2025), available at https://www.youtube.com/watch?v=cuY5nBaA2VA.

We therefore hold that the revocation court lacked authority to revoke Hitchner's probation and sentence him for a violation that occurred after his probation expired, thus rendering his sentence illegal. *See Commonwealth v. Prinkey*, 277 A.3d 554, 562 (Pa. 2022); *see also, e.g.*, *Mathias*, 121 A.3d at 562 (agreeing with probationer "that his sentence is illegal because his five-year term of probation had expired when the trial court revoked his probation and sentenced him"). As we reaffirmed in *Prinkey*, "an illegal sentence [is] one that was imposed without authority." *Prinkey*, 277 A.3d at 561 (*citing Commonwealth v. Barnes*, 151 A.3d 121 (Pa. 2016)). Based on the limited record before us, absent from Hitchner's case is an active, unfinished term of probation. Accordingly, we vacate Hitchner's illegal sentence.[24]

The Commonwealth suggests that granting Hitchner relief is akin to giving him a free pass for absconding from his supervision. *See* Commonwealth's Brief at 12–14. Specifically, the Commonwealth claims that "[a]ccepting that probationers can abscond to avoid supervision until their originally-calculated end date passes jeopardizes the court's ability to rely on probation as an effective alternative to incarceration." *Id.* at 12–13 (citations omitted). However, our decision today does no such thing. A defendant's failure to comply with reporting requirements before his probation's expiration date furnishes independent grounds for revocation — and there is no *per se* rule prohibiting revocation of probation for violations that occurred **before** the probationary term expired. *See Commonwealth v. Marchesano*, 544 A.2d 1333, 1336 (Pa. 1988) (observing that

---

[24] Challenges to an illegal sentence are nonwaivable and reviewable *sua sponte*. *See Prinkey*, 277 A.3d at 568 n.24; *see also Commonwealth v. Wolfe*, 140 A.3d 651, 655 (Pa. 2016) ("[C]ourts are empowered to address illegal sentences regardless of issue preservation concerns." (citations omitted)). We thus reject the Commonwealth's contention that Hitchner waived the issue of whether the revocation court "lacked the authority to extend his probation." Commonwealth's Brief at 19 n.7.

"there are valid reasons why a probationary revocation hearing may be delayed until after the expiration of the probationary period").

Moreover, requiring that the Commonwealth carry its burden of proof in revocation proceedings furthers, rather than frustrates, the purpose of probation. *See Gagnon*, 411 U.S. at 785 ("[T]he whole thrust of the probation-parole movement is to keep [individuals] in the community, working with adjustment problems there, and **using revocation only as a last resort** when treatment has failed or is about to fail." (citation and footnote omitted; emphasis added)). Holding otherwise would create irreconcilable tension with Section 9771(d)'s mandate that the court must consider evidence of the "defendant's conduct on probation." 42 Pa.C.S. § 9771(d). It would reintroduce indefiniteness into Pennsylvania's probationary scheme by creating "confusion where none should exist." *Duff*, 200 A.2d at 774. And that would undermine probation's value as "a rehabilitative device to be used to assist the offender in his adjustment to life within society." *Commonwealth v. Cottle*, 426 A.2d 598, 602 (Pa. 1981). In short, if the purpose of probation went unfulfilled here, it is because the Commonwealth failed to meet its burden of proof at the *Gagnon II* hearing — not because we condone abscondment.[25]

---

[25] A probationer gains no benefit by absconding. *Cf. United States v. Talley*, 83 F.4th 1296, 1302–1303 (11th Cir. 2023) ("An offender who flees supervision in violation of his supervision conditions will not evade his sentence or otherwise benefit from his misconduct. Instead, that violation grants the sentencing court authority to revoke the absconder's supervised release and resentence him to a term of imprisonment with a new term of supervised release to follow. A violation of a condition of supervised release — even an egregious violation like absconding — can be punished by revocation for that violation." (internal citations omitted)). As discussed *supra*, under Pennsylvania law, noncompliance with properly imposed reporting requirements provides an independent basis for revocation. The statutorily authorized conditions of supervision include reporting requirements, and the court may revoke a term of probation if the defendant violates any of those conditions. *See* 42 Pa.C.S. §§ 9763(b)(12), 9771(b). This Court's precedents also permit revocation for violations that occurred **before** the probationary term expired. *See Marchesano*, 544 A.2d at 1336; *see also, e.g.*, *Commonwealth v. Burrell*, 441 A.2d 744, 745–746 (Pa. 1982) (holding that "it is not unreasonable for a probation revocation
(continued…)

### B.    The *Ortega* Rule

To avoid confusion, we emphasize that our decision is **not** an endorsement of the *Ortega* rule, under which an absconder's "probationary period will be 'extended by his ongoing delinquency[,]'" and "a court may revoke probation based upon conduct that occurred during a defendant's probation 'as extended by delinquent time.'" *Hitchner II*, 304 A.3d at *5 (*citing Ortega*, 994 A.2d at 885). On the contrary, we expressly disapprove of the *Ortega* rule because it has no basis in the plain language of the probation statutes.[26] Pennsylvania's probation statutes "require[] the imposition of probation for a fixed period of time[,]" and a court may not "lengthen[] the term of probation beyond the fixed term specified at sentencing." *Rosario*, 294 A.3d at 350; *see also* 42 Pa.C.S. § 9754(a). Revocation is a prerequisite to the imposition of a lengthier probation sentence, and the post-revocation sentence functions as "a new sentence." *Holmes*, 933 A.2d at 59 n.5 (*citing* 42 Pa.C.S. § 9771(b)). So, while the statutes authorize courts to impose a new sentence if a probationer absconded, they do not permit courts to **extend** his existing sentence "beyond the fixed term specified at sentencing" merely because he may have gone unsupervised. 42 Pa.C.S. § 9754(a); *cf. Rico*, 146 S.Ct. at 955 (rejecting rule that

---

hearing to be postponed pending adjudication of criminal charges which are the basis for the revocation, even if that postponement results, as here, in a revocation hearing held after the expiration of the probationary sentence" (citation omitted)).

[26] *Ortega* also held that, absent a new criminal offense or a violation of a specific condition of probation, a court still may revoke probation if the Commonwealth "showed by a preponderance of the evidence that probation had proven ineffective at rehabilitating [the probationer] and deterring him from antisocial behavior." *Ortega*, 995 A.2d at 886. We later rejected this holding. *See Foster*, 214 A.3d at 1251 n.14 ("We expressly disapprove of the Superior Court's reliance on … *Ortega* and its progeny for the proposition that revocation of probation is permissible in the absence of a finding that the defendant violated a specified condition of probation if the [revocation] court finds that probation has been ineffective to rehabilitate or to deter against antisocial conduct."). Today, we disapprove of *Ortega* in its entirety.

allows courts to "impose[] a new punishment on [an absconder] by automatically extending his term of supervis[ion]").[27]

Yet that is what the *Ortega* rule does.  It allows a court to extend a probationary term on the grounds that the sentence "was '**extended** by [the probationer's] ongoing delinquency.'"  *Ortega*, 995 A.2d at 885 (emphasis added).  And that is exactly what happened in Hitchner's case.  The Superior Court held "his supervision was '**extended** by his ongoing delinquency.'"  *Hitchner II*, 304 A.3d at *5 (emphasis added) (*citing Ortega*, 995 A.2d at 885).  The Commonwealth asks us to condone this practice.  *See* Commonwealth Brief at 11 (defending Hitchner's "**extended**-due-to-absconding" sentence (emphasis added)).  We cannot.

---

[27] *Rico* was decided after oral argument was held in the appeal *sub judice*.  On April 9, 2026, Hitchner filed an Application to Submit Post-Submission Communication Pursuant to Pa.R.A.P. 2501(a) regarding the *Rico* decision.  *See* Pa.R.A.P. 2501(a) ("After the argument of a case has been concluded or the case has been submitted, no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument.").  This Court provided the Commonwealth an opportunity to file a response by April 27, 2026, and none was filed.  Due to the Commonwealth's failure to respond, we hereby grant Hitchner's application pursuant to Rule 2501(a).

*Rico* addressed a question of federal statutory interpretation and thus does not control the issue presently before us, which concerns an issue of state statutory interpretation.  *See Estate of Benyo v. Breidenbach*, 233 A.3d 774, 783 (Pa. 2020) ("A federal court's interpretation of a federal statute is not binding upon this Court's interpretation of a state statute.").  Still, we may rely on "instructive" United States Supreme Court decisions as persuasive authority.  *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 1000 n.6 (Pa. 2020).  We find *Rico* instructive because the rule rejected by the Court in that case resembles the Superior Court's *Ortega* rule.  *Compare Rico*, 146 S.Ct. at 955–956 ("[The government's] proposed rule does not stop any clock or merely ensure a defendant does not take advantage of his abscondment.  It imposes a new punishment on him by automatically extending his term of supervised release."), *with Hitchner II*, 304 A.3d at *5 (applying the judge-made rule that "a court may revoke probation based upon conduct that occurred during a defendant's probation 'as extended by delinquent time'" (*citing Ortega*, 995 A.2d at 885)).

A review of the *Ortega* rule and its origins reveals that it rests primarily on two judicial decisions addressing a distinct statutory scheme applicable only in the state parole context. *See Ortega*, 995 A.2d at 885 (*citing Young v. Commonwealth Bd. of Prob. & Parole*, 409 A.2d 843 (Pa. 1979); *and Kuykendall v. Pa. Bd. of Prob. & Parole*, 363 A.2d 866, 868 (Pa. Cmwlth. 1976)). *Young* concerned a state constitutional challenge to a statute granting the state parole board the power to recommit a parole violator "for the balance of the original sentence without giving credit for the period [the parolee] was at liberty on parole ('street time')." *Young*, 409 A.2d at 844 (citation omitted). Ultimately, we held that the statute was "not an encroachment upon the judicial sentencing power" and thus not a violation of the separation of powers. *Id.* at 848. In doing so, we opined:

> To allow a delinquent parolee to have the benefit of "street time" during which he ignored the conditions of his parole would render parole impotent as a corrective device and would in fact lessen the judicially mandated period of custody. Thus [the parolee's] position would create the very evil that he claims exists.

*Id.* However, county probation and state parole are governed by different statutes, so *Young* does not necessarily extend to the probation context. *Cf. Commonwealth v. Koger*, 295 A.3d 699, 708 (Pa. 2023) ("Section 9754, as its title and text make plain, has absolutely no bearing on parole."); *id.* at 708–711 (recognizing that county probation, county parole, and state parole are governed by different statutory schemes); *Holmes*, 933 A.2d at 59 n.5 (noting that "probation" and "parole" are different but that they are "often confused").[28]

Without a basis in the plain language of the probation statutes or decisional law from our Court interpreting that language, the *Ortega* rule is nothing more than a creature

---

[28] For similar reasons, the *Ortega* Court's reliance on the Commonwealth Court's decision in *Kuykendall* is equally unavailing. *Kuykendall*, like *Young*, concerned a statute granting the state parole board the power to "recommit and recompute the sentence of a parolee who commits a crime while on parole but is not convicted until after his original sentence would have expired." *Kuykendall*, 363 A.2d at 868 (citations omitted); *see also Young*, 409 A.2d at 848 (*citing Kuykendall*, *supra*).

of judicial fiat. The *Ortega* Court's own words reflect that its rule is rooted in judicial policy. *See, e.g.*, *Ortega*, 995 A.3d at 885 (refusing to tolerate "the absurd result of crediting an absconder with having served a probationary sentence on his own terms, free from supervision and willfully indifferent to the public's interest in his rehabilitation"). However, the Superior Court lacks the power "to enunciate new precepts of law or to expand existing legal doctrines." *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792 (Pa. Super. 1999) (*citing Malinder v. Jenkins Elev. Mach. Co.*, 538 A.2d 590, 513 (Pa. Super. 1988) (*en banc*)); *cf. Commonwealth v. Ellery*, 713 S.W.3d 114, 119 (Ky. 2025) (holding that the judiciary "lacks the authority to adopt the fugitive tolling doctrine under the separation of powers doctrine," since "the General Assembly has not enacted a fugitive tolling statute").

Furthermore, the *Ortega* rule — both on its own terms and as applied in Hitchner's case — violates the specific statutory language governing probation revocation. The Superior Court relied on *Ortega* to revoke Hitchner's probation for conduct that occurred after the expiration of the "fixed term specified at [his] sentencing." *Rosario*, 294 A.3d at 350. But Section 9771(d) clearly prohibits revocation "except after a hearing at which the court **shall** consider the record of the sentencing proceeding together with evidence of **the conduct of the defendant while on probation.**" 42 Pa.C.S. § 9771(d) (emphases added). "The revocation court has no discretion to opt out of this obligatory consideration, either because probation has not yet started **or for any other reason**." *Rosario*, 294 A.3d at 349 n.13 (emphasis added). As we explained in *Rosario,*

> The word "shall" commonly connotes a mandatory requirement. In addition, when used as a conjunction as it is here, "while" generally means "during the time." Thus, under the express terms of subsection (d), the court cannot revoke probation unless the court has considered the defendant's conduct during the time he was serving probation. An assessment of the defendant's conduct while on probation, however, is possible only if the probationary term has in fact actually begun. If the probation has not commenced, then perforce there is no conduct of the defendant while on probation for the court to consider. In other words, in the anticipatory revocation context, the statutory mandate to consider the defendant's

> conduct on probation is impossible to satisfy. In this way, subsection (d) limits the revocation of probation to the cancellation of probationary terms currently being served, and forecloses the anticipatory revocation of probation sentences yet to begin.

*Id.* at 348–349 (citations omitted).

This reading of subsection (d) is buttressed by the plain text of subsection (a), which "does not include the revocation of probation as something the court may do 'at any time.'" *Id.* at 347 (*citing* 42 Pa.C.S. § 9771(a)); *see also Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) ("[A]lthough 'one is admonished to listen attentively to what a statute says[, o]ne must also listen attentively to what it does not say.'" (alterations modified) (*citing* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947))). In *Rosario*, applying the "negative-implication canon" (*expressio unius est exclusio alterius*),[29] we reasoned that "[t]he implication of this omission is that revocation cannot be ordered at any time but rather is subject to temporal limitations[.]" *Rosario*, 294 A.3d at 347 (*citing Thompson*, 223 A.3d at 1277). If conduct occurring before a probation term begins cannot furnish grounds for revocation, surely conduct occurring after the term ends cannot either. *See id.* at 348–349, 355–356. When deciding whether a probationer committed a violation justifying revocation, the court may only consider his conduct "while on probation."[30] 42 Pa.C.S. § 9771(d).

---

[29] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2013); *see also, e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (observing "the familiar rule that negative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted" (citation omitted)). Under this canon, "the inclusion of a specific matter in a statute implies the exclusion of other matters." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002) (citation omitted).

[30] Although we conclude the *Ortega* rule violates the plain text of Section 9771, the rule of lenity resolves "any hypothetical ambiguity in this regard[.]" *Rosario*, 294 A.3d at 350. The rule of lenity provides that, "when a penal statute is ambiguous, it must be strictly (continued…)

## V.    CONCLUSION

In summary, we hold as follows: (1) a sentence of probation cannot be revoked based on violations that postdate the expiration of the probation term; (2) a sentence imposed based on conduct that occurred only after the term's expiration constitutes an illegal sentence; and (3) the Superior Court's *Ortega* rule is disapproved.

Applying those holdings to the limited record before us on appeal, we conclude that the Commonwealth failed to meet its burden of proving that Hitchner absconded or otherwise violated his probation before his sentence's expiration date.  Thus, the revocation court erred when it revoked Hitchner's probation and imposed a new (illegal) sentence.  Because Hitchner's probation term has expired, we reverse the Superior Court's order, vacate the judgment of sentence, and remand with instructions for the revocation court to terminate supervision in this matter.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Brobson join the opinion.

Justice Mundy concurs in the result.

---

construed in favor of the defendant."  *Id.* at 350 (citations omitted); *see also* 1 Pa.C.S. § 1928(b)(1).  Therefore, insofar as "[S]ection 9771 remains, after exhausting all other tools of statutory interpretation, hopelessly ambiguous as to whether it authorizes the [*Ortega* rule], the rule of lenity calls for the conclusion that it does not."  *Rosario*, 294 A.3d at 350.